IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GLORIA PEREZ, individually, and on behalf of a Class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC. and WAL-MART ASSOCIATES, INC.,<br><br>Defendants. | Case No.<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

COMPLAINT

Plaintiff Gloria Perez, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, for their complaint against Defendants Walmart, Inc. and Wal-Mart Associates, Inc. (collectively, "Walmart"), hereby state as follows:

1. Plaintiff worked as a retail associate at the Walmart store in Marshall, Saline County, Missouri.

2. In response to the COVID-19 pandemic, in or about April 2020, Walmart implemented a nationwide policy requiring its workers to undergo mandatory COVID-19 screening each shift before being allowed to clock-in or go to work. To facilitate this required screening, Walmart instructed its workers to arrive 30 minutes before their scheduled shift to complete the requisite questionnaire, screening, and body temperature scan.

3. Walmart's workers continue to work through the pandemic. And they put in the time necessary to comply with Walmart's COVID policies so that the company's stores can remain in operation. But Walmart does not pay these employees for the time that the company requires of them. As a result, Walmart is unjustly enriched at the expense of its workers.

4. This lawsuit is brought as a Rule 23 class action under Missouri common law to recover compensation owed to Plaintiff and other similarly situated Walmart employees in the State of Missouri.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332(d) as this case alleges a class action claim in which the matter in controversy exceeds $5,000,000 and most of the class members are citizens of a state different than the citizenship of the defendants.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Walmart is deemed a resident of the Western District of Missouri as it is subject to personal jurisdiction in this District. Venue in this division of the Western District of Missouri is proper because Walmart maintains multiple stores in the Western Division of this Court and a substantial part of the events giving rise to this claim occurred in the Western Division of this Court.

## PARTIES

7. Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716. Walmart Inc. is a citizen of Delaware and Arkansas.

2

8. Defendant Wal-Mart Associates, Inc. is a Delaware corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716. Walmart Inc. is a citizen of Delaware and Arkansas.

9. Plaintiff Gloria Perez is a resident of the State of Missouri and was employed by Walmart at the Walmart store in Marshall, Missouri from January 2020 through November 2020.

## GENERAL ALLEGATIONS

10. At last count, Walmart employed 39,442 workers in Missouri. *See* https://corporate.walmart.com/our-story/locations/united-states/missouri (last accessed Feb. 25, 2021).

11. The average wage for Walmart's workers in Missouri is $14.08. *Id.*

12. Walmart's physical footprint in Missouri is made up of 112 Supercenters, 9 discount stores, 16 Neighborhood Markets, 19 Sam's Clubs, and 4 Distribution Centers. *Id.*

13. Following the outbreak of the Coronavirus pandemic, Walmart implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Walmart as a requirement to work each shift. The examination was conducted on the premises of Walmart, was required by Walmart, and was necessary for each employee to perform his/her work for Walmart.

14. Walmart did not pay its employees for the time spent on these required COVID screenings.

15. Plaintiff Gloria Perez worked for Walmart as an hourly, non-exempt employee at Walmart Store 363 in Marshall, Missouri, from January 2020 until November

2020. She was paid approximately $11.50 per hour. Prior to the COVID-19 outbreak, Ms. Perez typically worked approximately 32 hours per week. After the COVID-19 outbreak (i.e., after about March 2020), Ms. Perez was scheduled to work up to 38 hours per week over five workdays.

16. Starting in or about April 2020, Walmart required, and continues to require, its employees to arrive at its retail stores and fulfillment centers prior to the start of their scheduled shifts in order to participate in mandatory COVID-19 screening.

17. The screening process involves another employee of Walmart taking the temperature of each employee whose shift is about to start and asking a series of questions related to their health condition, such as whether they had trouble breathing, were coughing, had a runny nose, chest pain, and other questions regarding their health. They were also asked questions such as (1) whether the employee has travelled recently, (2) whether the employee was exposed to someone with COVID-19, and (3) other similar questions. If the employee passes the examination, he/she is then given a sticker to wear with the date on it indicating that he/she has cleared the COVID-19 screening. The employee is also given a face mask and gloves that he/she must put on before entering the store. After the employee enters the store, the employee is allowed to clock-in for the day. The employees normally walked to the opposite end of the store where the time clocks were located.

18. If an employee does not pass the initial examination, that employee is moved to another section where a second examination occurs. The employee is then asked a series of follow-up questions to identify whether the worker currently has symptoms of COVID-19 and poses a potential health hazard to the store. If the employee passes the second

4

examination, the employee is then given a face mask and gloves and is allowed to clock-in for the day. If not, the employee is not permitted to work that day.

19. Walmart employees, including Ms. Perez, are not allowed to clock-in until after they undergo the mandatory COVID-19 screening.

20. Walmart's managers and supervisors instructed their employees, including Ms. Perez, to arrive 30 minutes prior to their scheduled shift in order to have enough time to complete the required screening and still clock-in at or just before the employees' scheduled shift.

21. Regardless of how long the employee had been on-site for the COVID-19 screening, Walmart employees were not allowed to clock-in sooner than approximately eight (8) minutes prior to their scheduled shift.

22. The amount of time it takes to undergo the COVID-19 examination is approximately 10 minutes to 15 minutes on average. This amount of time could be longer if there are other Walmart employees in line for the COVID-19 screening. In any event, Walmart required employees to arrive 30 minutes in advance of their scheduled shift for the COVID-19 screening.

23. This COVID-19 screening should have been paid by Walmart because it constitutes compensable time worked. During this time, Plaintiffs were subject to the control of Walmart.

24. Plaintiffs were required to follow Walmart's instructions while awaiting and during the COVID-19 screening. Walmart required every employee to complete the COVID-19 screening; it was not optional. Indeed, Plaintiffs faced the threat of discipline, including possible termination, if they failed to comply.

5

Case 4:21-cv-00120-HFS    Document 1    Filed 02/25/21    Page 5 of 11

25. Additionally, Plaintiffs were confined to the premises of Walmart when they waited for and during the examination.

26. Moreover, Walmart compels its employees to perform specific tasks during the examination. They must answer questions, submit to having their temperature taken, and wear masks and gloves.

27. In other words, Walmart directs, commands, and restrains its employees during the COVID-19 examination, preventing them from using that time effectively for their own purposes.

28. The COVID-19 screenings were also necessary to the principal work performed by Plaintiffs and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Walmart's premises primarily for the benefit of Walmart.

29. The COVID-19 examinations are intended to ensure that the virus does not infect Walmart's facilities or customers. If Walmart did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Walmart facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers and customers of Walmart. Thus, the examinations were necessary to ensure that the virus did not disrupt Walmart's business operations.

30. As a result, the COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiffs: to serve and assist Walmart customers.

31. Walmart knew or should have known that its employees should be paid for the time they were required to arrive early and participate in the mandatory COVID-19

6

screenings. Indeed, the United States Department of Labor has issued regulations and opinion letters stating that examinations, like the COVID-19 screenings, constitute time that should be paid for by employers. *See* 29 CFR § 785.43; DOL Wage and Hour Opinion Letter, 1998 WL 852652 (Jan. 26, 1998) ("Generally, whenever an employer imposes special requirements or conditions that an employer must meet before commencing or continuing productive work, the time spent fulfilling such special conditions is regarded as indispensable to the performance of the principal activity the employee is hired to perform.").

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on her own behalf and as class representative on behalf of the following:

> Persons who are currently working or previously worked for Walmart as an hourly employee in a Walmart facility in Missouri and participated in a required pre-shift, COVID-19 screening.

33. Plaintiffs' state law claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

34. This class numbers in the thousands of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including but not limited to, direct mail, email, jobsite posting, and website posting.

35. There are questions of fact and law common to the class that, under Missouri state law, predominate over any questions affecting only individual members.

The questions of law and fact common to the class arising from Walmart's actions include, without limitation, the following:

    a. Whether Walmart instituted a policy requiring its employees to arrive at the jobsite at a designated time for a pre-shift COVID screening;

    b. Whether Walmart paid for the time spent by its employees to comply with Walmart's COVID screening policy; and

    c. Whether Walmart was unjustly enriched by failing to pay its employees for that time.

36. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

37. Plaintiff's claims under Missouri state law are typical of those of the class in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar practices as Plaintiff.

38. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Walmart has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Walmart, and/or substantially impair or impede the ability of class members to protect their interests.

39. Plaintiff is an adequate representative of the Missouri class because she is a member of the class and her interests do not conflict with the interests of the members of the class she seeks to represent. The interests of the members of the class will be fairly and adequately protected by Plaintiff and her undersigned counsel. Counsel are

experienced in the litigation of civil matters, including the prosecution of complex wage and hour, employment, and class action cases.

40. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I
## UNJUST ENRICHMENT

41. Plaintiffs re-allege the allegations set forth above.

42. Plaintiffs and the class of similarly situated employees conferred a benefit on Walmart in the form of the time they spent on Walmart's behalf to comply with the company's policies and allow the company to continue to operate during the COVID pandemic.

43. Walmart readily accepted and retained these benefits from Plaintiffs and knowingly benefitted from its unjust conduct – at Plaintiffs' expense – by failing to pay its employees for the time the company required them to spend on its behalf.

44. Walmart was aware or should have been aware that it was receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

45. Walmart's acceptance and retention of the benefit of the employees' unpaid labor was unjust and inequitable and resulted in Walmart being unjustly enriched.

46. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs through its unjust and unlawful acts without paying for said benefits.

47. There is no express contract governing this dispute and Plaintiffs do not have an adequate remedy at law.

WHEREFORE, Plaintiffs demand judgment against Walmart and pray this Court:

a. Certify the claim set forth above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Order Walmart to disgorge the value of its ill-gained benefits to Plaintiff Gloria Perez and all similarly situated employees;

c. Award Plaintiff Gloria Perez and all similarly situated employees pre-judgment and post-judgment interest as provided by law; and

d. Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of all issues so triable.

Respectfully submitted,

**LEAR WERTS LLP**

/s/ Todd C. Werts
Bradford B. Lear, Mo. Bar No. 53288
Todd C. Werts, Mo. Bar No. 53204
Anthony J. Meyer, Mo. Bar No. 71238
103 Ripley Street
Columbia, MO 65201
Telephone: 573-875-1991
Facsimile: 573-279-0024
Email: lear@learwerts.com
Email: werts@learwerts.com
Email: meyer@learwerts.com